George **DURISEK**, Plaintiff,

v.

**JONES & LAUGHLIN STEEL CORPO-RATION**, Defendant,

v.

The **BUCKEYE UNION CASUALTY COMPANY**, Third-Party Defendant.

No. C 65–27.

United States District Court
N. D. Ohio, E. D.
Nov. 28, 1967.

Marshall I. Nurenberg, Cleveland, Ohio, for plaintiff.

James A. Butler and Joseph Horrigan, Cleveland, Ohio, for defendant.

Clarence L. Mollison, Cleveland, Ohio, for third-party defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This action was instituted on January 18, 1965, by George Durisek, plaintiff herein, seeking damages from the defendant, Jones & Laughlin Steel Corporation (hereinafter referred to as J & L) for personal injuries allegedly suffered by him as a result of the negligence of J & L's employees. On April 19, 1967, J & L entered a motion pursuant to Rule 14 for leave to file a third-party complaint naming the Buckeye Union Casualty Company (hereinafter referred to as Buckeye) as the third-party defendant. Rule 14(a) provides in part:

"At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

Leave was granted on May 19, 1967, and three days later the third-party complaint was filed. Buckeye entered its

answer to the third-party complaint, and has now moved for summary judgment on this complaint pursuant to Rule 56.

In determining the merits of this motion for summary judgment, Rule 56(c) directs the court to apply the following standard:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The court, applying this standard, makes the following determination:

The pleadings, affidavits, and admissions of fact made by the parties reveal no disagreement over the facts relevant to a determination of Buckeye's liability.

George Durisek maintained a repair shop under the name Midwest Welding & Boiler Company. He also owned a pick-up truck, which he used in the business. On March 29, 1962, he purchased Comprehensive Liability Policy (General Automobile) NO. CLA 40558 from Buckeye, the third-party defendant. This policy, which was issued for a period of one year from date of purchase, was in full effect on January 29, 1963. It provided, in part, as follows:

> "1. Coverage A—Bodily Injury Liability—Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.

> "III. Definition of Insured. The unqualified word 'insured' includes the named insured and also includes * * any person while using an owned automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, * * *.

> "3. Definitions. * * *

> (b) Automobile. Except where stated to the contrary, the word, 'automobile' means a land motor vehicle * * *.

> * * * * * *

> "(f) Purposes of Use. The term 'pleasure and business' is defined as personal, pleasure, family and business use. The term 'commercial' is defined as use principally in the business occupation of the name insured as stated in the declarations, including occasional use for personal, pleasure, family and other business purposes. Use of an automobile includes the loading and unloading thereof."

On January 29, 1963, Durisek drove to J & L's Jennings Road plant "for the purpose of removing therefrom, on his truck, a certain part of defendant's (J & L's) crane." He had previously arranged with J & L's employees that he would bring the truck to the plant and receive the crane part. He was then to transport the part to the Midwest Welding & Boiler Company and repair it.

Durisek drove his truck onto the premises. With his permission, some of J & L's employees got onto Durisek's truck "for the purpose of loading the crane part onto the truck." Durisek attempted to help them and was injured.

After the accident, according to Durisek's affidavit and his deposition, he then drove the truck back to his repair shop. This activity was part of his agreement with J & L.

It appears, then, that the only physical contact J & L's employees had with Durisek's truck was in connection with the loading operation. Durisek drove the truck onto the property, and Durisek drove it off the property. J & L's only physical contact with the truck occurred when its employees climbed aboard and loaded the crane part.

Both parties accept these as the operative facts. They are, as restated by

counsel for J & L in their Brief in Opposition to the Motion for Summary Judgment:

"* * * Durisek drove his truck into J & L's premises. He got out of the truck and stood near the rear of it. He surrendered possession of the vehicle to the J & L employees who commenced to load the truck. A J & L man operated J & L's front lift truck to which a differential housing in need of repair was attached. This housing was to be carried away in the insured's truck. At least one other J & L man climbed into the bed of the insured's truck and gave directions to the operator of the lift truck how to raise, move forward and lower the differential housing onto the bed of the insured's truck. While this loading operation was moving along safely as anticipated, Plaintiff took it upon himself to interfere with the operation. He took hold of the cable to which the housing was attached and moved the cable for the purpose of placing the load in a spot other than where it was about to be placed. Immediately after Plaintiff moved the cable, a dump arm on J & L's front lift truck was so disturbed that it fell so as to strike Plaintiff's right arm which he had extended over the bed of the truck."

The issue to be decided by the court on this Motion for Summary Judgment is whether J & L, under the agreed-upon set of facts, is an "insured" within the meaning of the insurance policy that Buckeye issued to George Durisek. If so, Buckeye may be obligated to indemnify J & L for liability incurred by J & L as a result of Durisek's claim against it.

■■ Since this is an action based on diversity of citizenship, the *Erie* doctrine requires this court to apply state substantive law to the issues in this case. Here, we are called upon to interpret the provisions of the insurance policy George Durisek purchased from Buckeye. Both parties to the policy are Ohio residents, and the policy recites that it was consummated in Ohio. There is, therefore, no question but that the law of Ohio applies here.

Paragraph 1, Coverage A of the policy obligates Buckeye "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * sustained by any person, caused by accident and arising out of the ownership * * * or use of any automobile." ("Automobile" is defined by Condition 3(b) to include trucks.)

Paragraph III defines "insured" to include "the named insured and also * * any person while using an owned automobile * * * provided the actual use of the automobile is by the named insured or with his permission * * * " Condition 3(f) states that "Use of an automobile includes the loading and unloading thereof."

The question to be determined is whether J & L, in loading Durisek's truck with Durisek's permission was "using" the truck, so as to qualify as an insured under Buckeye's policy.

we are not without guidance in this matter from the courts of Ohio. In three recent cases the Supreme Court of Ohio has had occasion to construe language virtually identical to that present in the policy here. These cases were: Travelers Ins. Co. v. Buckeye Union Casualty Co., 172 Ohio St. 507, 178 N.E. 2d 792, 95 A.L.R.2d 1114 (1961); Buckeye Union Casualty Co. v. Illinois National Ins. Co., 2 Ohio St.2d 59, 206 N.E.2d 209 (1965); Ford Motor Co. v. Continental Casualty Co., 6 Ohio St.2d 114, 216 N.E.2d 44 (1966). Since the *Ford Motor* case is factually similar to the *Travelers* case and merely affirms the statements of the earlier opinions, we will give it no independent consideration.

In the *Travelers* case, an employee of the insured drove the insured's truck into a refinery to take on a load of fuel. As he stood on the truck he was knocked

to the ground by a quantity of escaping fuel. At no time did any of the refinery personnel get up onto the truck to load it, nor did they make physical contact with the truck in any other manner. The court held that the refinery's activities were not a sufficient use of the truck to qualify the refinery as an insured under the truck-owner's policy.

It is important to note that in the *Travelers* case the party seeking to qualify as an insured under the policy was not the named insured or one of his employees. The refinery was a third party otherwise unconnected with the truck. This fact is significant because the court chose to construe the policy differently where a third party was seeking coverage. See Buckeye Union Casualty Co. v. Illinois National Ins. Co., 2 Ohio St.2d 50, 206 N.E.2d 209 (1965) (dissent); Annotation, 95 A.L.R.2d 1122 at 1125.

At the outset, the court stated that, in determining the status of the third party, it was attempting to construe the intent of the parties to the insurance contract (on the vehicle). The refinery (through its insurer) contended that in loading the truck it was insured (under the vehicle policy) as a "user" of the vehicle.

The policy stated that "Use of the automobile * * * includes the loading and unloading thereof." Under the refinery's interpretation, loading and unloading were included on the same terms as other uses of the vehicle. The activities of loading or unloading would, therefore, be insured activities, regardless of whether these were the only "use" the third party made of the vehicle.

The court refused to accept this interpretation. It construed the language to mean that where a party had already qualified as an insured under the policy by some *other* use of the vehicle, the loading and unloading would be "included" as insured activities. The court read the policy as intending to include loading and unloading for the reason that these are a necessary incident to the other use of the vehicle. For example, where the truck is used to transport something, loading and unloading are necessary for the performance of this use, so are "included" in the use.

As the court put it:

"Reverting to the language in the contract, to say that 'use includes loading and unloading' is not tantamount to saying that the contemplated use is exclusively confined to loading and unloading. The former contemplates more than the latter. In our judgment, loading and unloading are but component parts of 'use,' and the former is of no consequence unless or until the party charged with negligence is shown to have been using the truck so as to qualify as an 'insured' within the definition of that term as used in the policy." 172 Ohio St. p. 513, 178 N.E.2d p. 797.

Under the court's interpretation, loading and unloading do not have the same status as the other "insured" activities. In the case of other "uses" of the vehicle, such as driving it from place to place, the activity itself is insured, regardless of whether or not it is accompanied by another insured "use" of the vehicle. But in the case of loading and unloading, these activities alone are not covered. Loading and unloading are insured activities only when they are incidental to another insured "use" of the vehicle. When they do accompany such other "use," they are "included" in the coverage of the use. The court, in effect, interpreted the language which "included" loading and unloading as intending to tack on coverage of the loading and unloading process, if the individual was already an insured by virtue of his using the vehicle for some purpose other than the loading or unloading itself. Loading and unloading, in such case, would be covered, since they are an incidental and essential part of this general use. As the court held:

"4. 'Loading' and 'unloading' are but component parts of the overall 'use'

contemplated by such an insurance contract and do not therefore become determinative of the question of liability unless or until the party charged with negligence is shown to have been actually using the truck so as to qualify as an 'insured' within the definition of that term as used in the policy." 172 Ohio St. p. 507, 178 N.E. 2d p. 793.

Under the court's interpretation, loading and unloading are insured activities only where they are incidental to a use of the vehicle which is independent of the loading or unloading activity itself. Where there is such an independent use of the vehicle, the policy's coverage "includes" the loading or unloading, since these are essential to the use.

 In essence, the court required that for a party to be insured in his loading or unloading activities, he must first be an "insured" under the terms of the policy on some other basis. In the case of the named insured, there is, of course, no problem with this requirement. With respect to his employees, these are normally covered because of their continuous use of the vehicle, in numerous ways, on the business of the named insured. See 172 Ohio St. at 513, 178 N.E.2d 792.

██ The requirement that the loading or unloading party first qualify as an insured by some other use of the vehicle has its real bite where a third party is the one claiming coverage. The party must be an insured by his "actual use" of the vehicle before his loading or unloading activities will be insured. The court stated:

"3. Where an injury is caused by the claimed negligence of a third party who is not connected with the truck, who has no legal relationship to the named insured and who under normal circumstances would not be using the truck of the named insured, it must first appear, before the liability provisions of the policy become applicable, that such third party was in the actual use of the truck at the time of the injury, with the express or implied permission of the named insured." 172 Ohio St. at 507, 178 N.E.2d at 793.

██ Applying this to the present case, the parties agree that the only physical contact J & L had with Durisek's truck was in connection with the loading of J & L's crane part. Durisek drove onto the property; J & L's employees loaded the part; and Durisek, after he was injured, drove off. This was the intended plan of procedure, and this is what actually transpired. Under this agreed-upon factual pattern, J. & L's only physical contact with the truck was in connection with the loading activity. And under the Travelers decision, such activity is insufficient "use" of the truck to qualify J & L as an insured under the Buckeye policy.

██ J & L seeks to distinguish the Travelers case from the situation here. J & L argues in Travelers, the refinery was not using the vehicle at all, even for loading, so that it could not qualify as an insured under any theory. J & L equates "use" with "exclusive control," and maintains that exclusive control of the vehicle is sufficient to make any activity an insured "use." Applying this theory, J & L argues that the truck driver in the Travelers case, who was standing on the truck at the time of the accident, had never relinquished control of the vehicle to the refinery employees. Since the driver had exclusive control, he was using the vehicle, whereas the refinery, not in control, was not using it. Under J & L's theory, the refinery, though it was loading the vehicle, was not using it, since it was not in control of it. While "use includes loading and unloading," the loading or unloading itself must qualify as a "use," and the refinery's activity did not qualify. On this basis, J & L distinguishes the present case, since here it asserts J & L was in exclusive control of the vehicle, so was "using" it to load.

J & L's distinction is interesting. But it is without merit. J & L's in-

terpretation would treat loading or unloading on the same basis as other insured activities. If the individual doing the loading or unloading was in actual control of the vehicle, the loading or unloading would be an insured "use" under J & L's theory, even though it was the only "use" made of the vehicle. This would read back into the insurance policy the interpretation rejected by the Ohio Supreme Court. It would equate loading and unloading with any other "use" of the vehicle, so long as the party loading was in "control" of the vehicle. Ohio has rejected this equality-of-treatment interpretation. Ohio requires the party claiming coverage to qualify as an insured by a use independent of the loading activity. If the other use is insured, the loading or unloading incidental to such use is "included" as an insured activity. J & L's argument is thus contrary to the law of Ohio and must be rejected by this court.

J & L makes one further argument. It asserts that it was using Durisek's truck " * * * to transport J & L's said crane part to Durisek's shop." The argument is that, because the transportation of the crane part was for a purpose of J & L, i. e., the repair of J & L's crane, J & L was "using" the truck. The transportation, since it was directed to the fulfilment of a purpose of J & L, was a "use" of Durisek's truck. J & L seeks to employ this "use" to qualify itself as an insured, and thereby "include" its loading activity as part of this overall use, since the loading was incidental to the transportation use.

This position is inconsistent with J & L's other contention that "exclusive control" is essential to qualify an activity as a use. J & L's latter argument seeks to qualify it as a user, even though the truck was in the exclusive control of Durisek during the alleged "use."

The argument, if accepted, would also read back into the policy the interpretation Ohio has rejected. For J & L's theory would enable a party whose only physical contact with the vehicle was the loading or unloading to qualify as an insured by showing, in effect, that there was a reason for performing the loading or unloading. Thus, for example, if J & L had sold the crane part to Durisek, it might claim it was using his truck to deliver the part. The same contention would be available, if J & L sold it instead to a third party and had hired Durisek to transport it. The effect of J & L's argument is to elevate the reason for loading the truck to the status of a use of the truck; and the effect of this is to evade the Ohio requirement that there must be some use outside the loading or unloading itself.

■ Ohio requires that the person claiming coverage for his loading or unloading activity first qualify as an insured by some other "use" of the vehicle. The determining question then, is whether J & L made any use of the truck, other than the loading or unloading, which would be an insured use itself.

■ J & L asserts that the transportation of its crane part for repair was such an insured "use" of the truck. In passing upon this, we must recall that we are construing the intent of the parties to the insurance contract. Did the parties intend to insure this "use"?

The policy obligates Buckeye "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * caused by accident and arising out of the * * * use of any automobile." It is apparent that the "use" J & L asserts, standing alone, could never subject it to liability which would be covered under the policy.

Suppose, for example, Durisek negligently injured someone on the way back to his shop. He would be liable, since he caused the injury. But since he was an independent contractor, and not an employee of J & L, J & L would not be liable. See 28 O.Jur.2d, Independent Contractors, Section 15. A seemingly more difficult case would be one where the crane part fell off the truck en route as a result of improper loading and injured someone. This could be due to

J & L's own negligence. Here, however, the accident would be referable to activities in the loading use and not the "transporting" use. This is more apparent if we assume that Durisek himself did the loading, for here J & L's only use would be the "transporting" use.

The insurance policy can hardly be construed as intending to provide coverage for a person who could not be held responsible for injuries which occurred. Since J & L would not be responsible for any injury which occurred during the transportation of its crane part, it could not qualify as an insured under the policy. And since it could not qualify as an insured on this basis, it cannot assert this "use" which is itself not insured to pull the incidental loading "use" up to insured status by its bootstraps.

We need not decide the question of what the standard is for determining what is an "actual use" of a vehicle under Ohio law. The policy contemplates insurance against liability, so it is likely that Ohio requires a "use" for which the party would be liable, if an injury occurred. It may also be that a physical use of the vehicle is required.

There is no necessity for choosing between these in this case, since J & L was not a "user" under either theory.

The Supreme Court of Ohio has rejected both of the arguments put forward by J & L in opposition to Buckeye's Motion for Summary Judgment. Indeed, at the present time it is questionable whether a named insured may ever be a claimant against his automobile liability carrier in Ohio, in view of the following statement of the Supreme Court in the *Illinois National* case:

"Under this holding, we can never arrive at a finding that an insured may be a claimant against a company which has computed a risk to protect the insured only against the claims of others." 2 Ohio St.2d at p. 63, 206 N.E.2d at p. 211.

It appears, then, that under Ohio law, if a third party can *ever* become an "insured" under an omnibus provision of a policy where the claimant is the named insured, more activity is required beyond mere loading and unloading. The loading and unloading must be incidental to a use which is itself insured, which qualifies the third party as an insured, and which is wholly independent of the loading or unloading operation.

Under the agreed-upon factual situation in the present case, J & L's use did not include any insured activity beyond the loading itself. In view of this, J & L cannot qualify as an insured under the terms of the Buckeye policy.

In view of the foregoing, the motion of Buckeye Union Casualty Company, third-party defendant herein, for summary judgment against Jones & Laughlin Steel Corporation, third-party plaintiff herein, on the third-party complaint is granted, and the third-party complaint is dismissed.

It is so ordered.