416 F.2d 882
 Helen T. KURDZIEL, Executrix of the Estate of Franklin C. Rosebrock, Deceased, Plaintiff,
v.
PITTSBURGH TUBE COMPANY, Third-Party Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Third-Party Defendant-Appellant.
 No. 19346.
 United States Court of Appeals Sixth Circuit.
 September 25, 1969.
 
 Frank E. Kane, Toledo, Ohio (Eastman, Stichter, Smith & Bergman, Toledo, Ohio, on the brief), for appellant.
 Beatrice K. Bleicher, Toledo, Ohio (Fred A. Smith, Toledo, Ohio, on the brief), for appellee; Cobourn, Smith, Rohrbacher & Gibson, Toledo, Ohio, of counsel.
 Before PHILLIPS, EDWARDS and CELEBREZZE, Circuit Judges.
 EDWARDS, Circuit Judge.
 
 
 1
 Third-party defendant-appellant Travelers Insurance Company appeals from a judgment entered in the United States District Court for the Northern District of Ohio, Western Division in favor of third-party plaintiff-appellee Pittsburgh Tube Company. Judgment was entered for "all costs and expenses incurred by Pittsburgh in defending a claim of Helen T. Kurdziel, Executrix." The principal suit was dismissed. Kurdziel v. Pittsburgh Tube Co., 416 F.2d 881 (6th Cir. 1969) (decided Sept. 25, 1969). The facts in the principal case are fully stated in the opinion for the court cited above and will not be repeated here.
 
 
 2
 It is, however, essential for purposes of this appeal to detail the posture of the parties. Plaintiff Kurdziel in the original case was the wife of one Rosebrock, who was an employee of the Clevite Corporation in Napoleon, Ohio. He was killed when a bundle of pipe, which was being unloaded in his employer's dock by a fellow employee, fell from a truck owned by Glenn Cartage Company. This pipe had been loaded on this truck by employees of Pittsburgh Tube Company at its plant in Monaca, Pennsylvania. The Clevite Corporation had contracted for the Glenn Cartage Company trucking service. Kurdziel's suit alleged that negligence of Pittsburgh Tube's employees in the loading of the truck was the proximate cause of Rosebrock's death.
 
 
 3
 Travelers Insurance Company carried a general liability policy insuring the vehicles of Glenn Cartage Company. One of the provisions of the policy insured others than the named insured while they were "using" the truck "(including loading and unloading)."[1] It was Pittsburgh Tube's contention, advanced in its third-party action against Travelers Insurance Company, that this provision made Travelers liable for Pittsburgh Tube's damages and/or its costs of defense. In the original case the District Judge, trying the case without a jury, dismissed the action against Pittsburgh Tube on the merits, and as noted, this court has affirmed that judgment. On Pittsburgh's suit against Travelers, the District Judge entered judgment for Pittsburgh's costs and expenses and Travelers' Appeals.
 
 
 4
 Two issues concern us on this appeal. First, Pittsburgh moves to dismiss the appeal on the ground that Travelers did not file its notice of appeal within the 30 day limit set by Rule 73(a) of the Federal Rules of Civil Procedure[2] and, hence, this court has not acquired appellate jurisdiction of the appeal. As to this, it is clear that the District Court's judgment was entered on November 27, 1968, that plaintiff-appellant Kurdziel filed notice of appeal on December 16, 1968, and that Travelers Insurance Company filed notice of appeal on December 30, 1968, the latter date being 33 days after the entry of judgment.
 
 
 5
 Undoubtedly, before the 1966 amendment to the rule involved, we would be required to grant Pittsburgh's motion to dismiss, but in 1966 the rule was amended to provide as follows:
 
 
 6
 "(3) if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed, or within the time otherwise herein prescribed, whichever period last expires; * * *" Fed.R.Civ.P. 73(a).
 
 
 7
 The committee which recommended adoption of this amendment did so saying as follows:
 
 
 8
 "The exception numbered (3) in the first sentence affords additional time for appeal to all parties other than an initial appellant whenever the first appeal taken from a judgment is taken within the 14 days preceding expiration of the time for appeal. Additional time for appeals by other parties following an initial appeal taken shortly before expiration of the time for appeal is common in state practice. Rules of Civil Procedure for the Superior Courts of Arizona, Rule 73(b); Illinois Supreme Court Rule 35 (S.H.A. Chapter 110, § 101.35); New Jersey Revised Rules 1:3-2; New York Civil Practice Law and Rules, Sec. 5513(b). The added time which may be made available by the operation of the provision is not restricted to cross appeals in the technical sense, i. e., to appeals by parties made appellees by the nature of the initial appeal. The exception permits any party to the action who is entitled to appeal within the time ordinarily prescribed to appeal within such added time as the sentence affords. Bertman v. J. A. Kirch Co., 377 U.S. 995, 84 S.Ct. 1913, 12 L.Ed.2d 1047 (1964), Schildhaus v. Moe, 335 F.2d 529 (2d Cir. 1964) and Whitehead v. American Security and Trust Co., 109 U.S.App.D.C. 202, 285 F.2d 282 (1960) are illustrative of the desirability of a change in the present rule." 9 Moore, Federal Practice ¶ 73.01[22], at 3127 (2d ed. 1968).
 
 
 9
 Concerning the above-quoted 1966 amendment, Moore's Federal Practice says as follows:
 
 
 10
 "The purpose of the addition is to permit each party to a judgment to decide upon the advisability of an appeal with full knowledge of the intentions of all other parties with respect to an appeal. Under the pre-1966 form of Rule 73(a), all parties were afforded the same time for taking an appeal under all circumstances — thirty days in cases involving private parties only, sixty days in cases to which the United States or an agency or an officer thereof was a party. A party who was content with the judgment if it was to be the final result of the action, i. e., if no other party were to take an appeal, often had no convenient way of determining that crucial fact, since if an appeal were to be taken by another within the final days allowed, the notice mailed by the clerk might not reach him in time to permit him to take his own appeal. To avoid the risk of losing his right to appeal, such a party was obliged either to take an appeal which he did not want or to keep watch at the clerk's office during the final days allowed for appeal to insure himself time for appeal in the event of an appeal by another.
 
 
 11
 "Amended Rule 73(a) goes far toward eliminating the necessity for so-called protective appeals and the wasteful practice of keeping a watch at the office of the clerk. The clause under discussion affords each party a period of at least fourteen days from the date on which an initial notice of appeal is filed within which to take his own appeal. Thus if the initial notice is filed on the final day of the thirty- or sixty-day period ordinarily allowed, any party other than the initial appellant may file a notice of appeal within fourteen days thereafter. Note, however, that the filing of an initial notice of appeal does not automatically extend the thirty- or sixty-day period ordinarily allowed; the period is extended only if the initial notice of appeal is filed within the fourteen-day period immediately preceding expiration of the time ordinarily allowed, and then only for a period of fourteen days from the date upon which it is filed. Note also that the added time begins to run from the date of filing of the initial notice of appeal, not from the date other parties receive notice that the initial notice has been filed. Failure of the clerk to send notice of the filing of the initial notice of appeal, as he is directed to do by Rule 73(b), or failure of a party to receive such notice, may, however, constitute excusable neglect and empower the district court to extend the time within which a cross- or separate appeal may be taken.
 
 
 12
 "The added time for appeal which may be made available by the operation of the clause is explicitly made available `to any other party', i. e., to any party other than the initial appellant. And the Committee Note emphasizes that `the provision is not restricted to cross-appeals in the technical sense, i. e., to appeals by parties made appellees by the nature of the initial appeal. The exception permits any party to the action who is entitled to appeal within the time ordinarily prescribed to appeal within such added time as the sentence affords.'" 9 Moore, Federal Practice ¶ 73.09 [1.-4], at 3166-67 (2d ed. 1968).
 
 
 13
 We believe that the purpose of the rule change was clearly to give subsidiary parties, such as third-party defendant Travelers, an opportunity to know whether or not an appeal was going to be taken in the principal case before they were required to make their judgment as to whether or not to appeal. We see much logic to the rule change and no occasion to construe its meaning contrary to the purpose stated by the committee and expressed in the language of the amendment. Travelers obviously desired to know whether or not plaintiff-appellant Kurdziel was going to appeal before it filed a notice of appeal itself. It did so within the time limit provided by the amendment to the rule. Pittsburgh's motion to dismiss is denied.
 
 
 14
 The second issue presented by this appeal concerns Travelers' claim that its policy did not cover Pittsburgh's risk. Travelers claims that the words "using" and "(including loading and unloading)" have been construed by the Ohio Supreme Court so as to require proof of using (by any other party than the named insured) over and above the mere loading and unloading of the equipment. Travelers cites and relies upon in this regard: Travelers Insurance Co. v. Buckeye Union Casualty Co., 172 Ohio St. 507, 178 N.E.2d 792, 95 A.L.R.2d 1114 (1961); Buckeye Union Casualty Co. v. Illinois Nat'l Ins. Co., 2 Ohio St.2d 59, 206 N.E.2d 209 (1965); Ford Motor Co. v. Continental Casualty Co., 6 Ohio St.2d 114, 216 N.E.2d 44 (1966). See also Durisek v. Jones & Laughlin Steel, 277 F.Supp. 350 (N.D.Ohio 1967). It appears from this record that these four cases were not cited to or argued before the District Judge.
 
 
 15
 Under language such as that which we construe here, the majority rule in the country appears to recognize the act of loading and unloading as part of "using." St. Paul Mercury Ins. Co. v. Huitt, 336 F.2d 37 (6th Cir. 1964); Lumbermen's Mutual Casualty Co. v. Employers Liability Assurance Co., 252 F.2d 463 (1st Cir. 1958). Annot., Risks within "loading and unloading" clause of motor vehicle liability insurance policy, 95 A.L.R.2d 1122 (1964).
 
 
 16
 But this a diversity action in which we are required to apply state law; in this instance the law of Ohio. Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 17
 It seems clear that the Ohio Supreme Court has adopted a contrary position to which we and the District Court are required to give effect. In the Buckeye Union Casualty Co. v. Illinois Nat'l Ins. Co. case, supra, the Ohio Supreme Court interpreted its rule fully:
 
 
 18
 "The language of paragraphs three and four of the syllabus of Travelers Ins. Co. v. Buckeye Union Casualty Co., supra, is as follows:
 
 
 19
 "`3. Where an injury is caused by the claimed negligence of a third party who is not connected with the truck, who has no legal relationship to the named insured and who under normal circumstances would not be using the truck of the named insured, it must first appear, before the liability provisions of the policy become applicable, that such third party was in the actual use of the truck at the time of the injury, with the express or implied permission of the named insured.
 
 
 20
 "`4. "Loading" and "unloading" are but component parts of the overall "use" contemplated by such an insurance contract and do not therefore become determinative of the question of liability unless or until the party charged with negligence is shown to have been actually using the truck so as to qualify as an "insured" within the definition of that term as used in the policy.'
 
 
 21
 "The provision in the subject standard automobile policy that `the purposes for which the automobile is to be used are "pleasure and business" * * * use of the automobile for the purposes stated includes the loading and unloading thereof' enlarges the meaning of the word, `use' when one is attempting to determine whether the car is being `used for pleasure and business.'
 
 
 22
 "This enlargement of the meaning of the word, `use,' for the purpose stated does not enlarge the meaning for the purpose of defining an insured in the following policy provision:
 
 
 23
 "`Definition of Insured
 
 
 24
 "`With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and also includes any person while using the automobile * * * provided the actual use is by the named insured or with his permission.' (Emphasis added.)
 
 
 25
 "The operation of loading and unloading is covered, but the loader or unloader is not `an insured' unless otherwise made so." Buckeye Union Casualty Co. v. Illinois Nat'l Ins. Co., supra, 2 Ohio St.2d at 62-63, 206 N.E. 2d at 211.
 
 
 26
 Pittsburgh contends also that Travelers failed to call these Ohio cases to the attention of the District Court and is thereby deprived of the opportunity to argue their effect on appeal. Travelers did, however, contest coverage by its policy before the District Court and this, of course, is its basic issue on appeal. As we have noted, it did not call to the attention of the court below the Ohio Supreme Court cases which appear to be controlling on this issue. We do not think this failure to argue applicable precedent forecloses presentation of such authority on appeal. Further, what we deal with is strictly an issue of law which comes within a recognized exception to the general rule upon which Pittsburgh relies. Foster v. United States, 329 F.2d 717 (2d Cir. 1964); American Surety Co. of New York v. Coblentz, 381 F.2d 185, 189 n. 5 (5th Cir. 1967); Leedom v. International Brotherhood of Elec. Wkrs, 107 U.S.App.D.C. 357, 278 F.2d 237 (1960). We do not, of course, know what facts might have been developed if this interpretation of the Ohio law had been advanced at trial court level.
 
 
 27
 We therefore vacate the judgment previously entered and remand for such further proceedings as may be required before the United States District Court in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The policy provided coverage to: "[A]ny person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." It also provided: "[U]se of an automobile includes the loading and unloading thereof."
 
 
 [2]
 Now Rule 4(a) Federal Rules of Appellate Procedure