HARTFORD ACCIDENT & INDEMNITY CO., APPELLANT, *v.* ZURICH
INS. CO., APPELLEE.

(No. 31484—Decided November 23, 1973.)

*Messrs. Baker, Hostetler & Patterson* and *Mr. Kenneth Torgerson,* for appellant.
*Messrs. Merkel, Campbell, Dill & Zetzer* and *Mr. Ernest Mansour,* for appellee.

JACKSON, J.   This is a declaratory judgment action brought by the appellant Hartford Accident & Indemnity Company (Hartford) against the appellee Zurich Insurance Company (Zurich), to determine Hartford's rights to reimbursement from Zurich for monies paid in settlement of a personal injury action filed against Pure Milk Corporation, the insured of Hartford.

The facts are stipulated and undisputed. Anheuser Busch, which is insured by the appellee Zurich, contracted to have Pure Milk store a number of cases of frozen eggs

for it at the Pure Milk facilities in Steubenville, Ohio. On February 6, 1961, Fred Schell, an employee of Anheuser Busch, drove a company truck to the Steubenville plant to pick up several of the cases and parked at the loading dock. While Schell was standing in the parking lot below the level of the loading dock, "[a]n employee of Pure Milk went into the cold storage room, loaded the cans on a dolly and pushed them out to the loading dock where he slipped and lost control of the dolly causing the canned eggs to fall on" Schell. (Finding of Fact No. 1). Schell sued Pure Milk for the injuries allegedly caused by its employee's negligence.

Pure Milk's insurer, Hartford, assumed the defense of this suit. Based upon a comparison of Hartford's own policy with that of Zurich—both of which will be discussed in greater detail below—Hartford formally demanded that Zurich take over the defense of Schell's suit against Pure Milk and assume primary responsibility for damages claimed by Schell. This demand was refused, and a settlement of $25,000 was finally made between Hartford and Schell. Hartford then filed this action.

The pertinent parts of the Hartford and the Zurich insurance policies are as follows:

Hartford (Ex. 2)
"Insuring Agreements

"I. Coverage A—Bodily Injury Liability—Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.
"* * *.

"II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is ground-

less, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"* * *.

"Purposes of Use Defined: ... Use of an automobile includes the loading and unloading thereof.

## "Conditions

"* * *.

"14. Other insurance: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Zurich (Ex. 1)
"Insuring Agreements

"I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

"* * *.

"II. Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"* * *.

"III. Definition of Insured. The unqualified word 'in-

sured' includes the named insured and also includes * * * (2) under coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. "* * *.

"Conditions

"* * *.

"3. Definitions.

"* * *.

"(f) Purposes of Use. . . . Use of an automobile includes the loading and unloading thereof.

"* * *.

"14. Other insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired autmobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

The trial court, in construing the contracts according to Ohio law, reached the following legal conclusions: (1) the servant of Pure Milk, being engaged in the continuous operation of loading the Anheuser Busch truck, was "using" the truck as defined by the provisions of the Zurich (Anheuser Busch's insurer) policy [see Ex. 1, "Conditions (3)(f)"]; (2) by using the truck, the servant of Pure Milk thereby became an "insured" under the terms of the Zurich policy [see Ex. 1, "Insuring Agreements I. Coverage A and III. Definition of Insured (2)"]; (3) neither Hartford nor Zurich had contracted to pay the entire loss, but only its proportionate part of the loss; (4) Hartford,

"with knowledge of the facts and without legal liability, voluntarily paid the entire amount of the loss;" (5) "[t]he voluntary payment by Plaintiff [Hartford] of more than its proportion of loss creates no right to contribution from the Defendant [Zurich]." The outcome of these conclusions is that Hartford does not have a right to reimbursement from Zurich.

Hartford assigns as error the trial court's latter three conclusions of law [(3), (4), (5)], listed above. It agrees with the court's conclusion that the Pure Milk employee was "using" the Anheuser Busch truck at the time of accident, thereby becoming an insured under Anheuser Busch's contract wtih Zurich. But it is Hartford's contention that "use" of the Anheuser Busch truck by the Pure Milk employee reduced Hartford's status from a primary insurer of Pure Milk and its employees to that of a secondary, excess insurer whose coverage obligation is only those damages that are in excess of the amount which Zurich must first pay as the primary insurer. Hartford grounds this argument on a specific provision in its policy, which provides that "insurance under this policy with respect to loss arising out of * * * the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance." (Ex. 2, "Conditions 14.") See *Motorists Mutual Ins. Co.* v. *Lumbermens Mutual Ins. Co.* (1965), 1 Ohio St. 2d 105. Hartford acknowledges that both it and Zurich have "other insurance" provisions providing for the proration of liability for a loss where there is overlapping coverage by several insurance companies. But it is urged that these provisions are inoperative in the instant case, since Hartford's obligation to provide only excess coverage is not "other insurance" that overlaps with Zurich's general, primary obligation to cover the entire loss up to the limits of its policy. Hartford thus concludes that the trial court erred in holding that both companies are obligated to pay its proportionate share of the loss.

Proceeding from the premise that its liability was only secondary and subordinate to Zurich's, Hartford argues

that, contrary to the lower court's conclusion, the settlement of the claim was not a voluntary payment of more than its proportion of the loss, for which there would be no right of contribution. Relying upon *Aetna Casualty & Surety Co.* v. *Buckeye Union Casualty Co.* (1952), 157 Ohio St. 385, it asserts that the settlement was made only to protect its own interest and may be recovered from the primary insurer, Zurich.

The appellee does not dispute the logic of the appellant's reasoning nor its analysis of relevant case law governing the rights between a primary and a secondary insurer. Instead, Zurich attacks a key conclusion of the trial court on which appellant's entire argument depends, namely: the finding that the Pure Milk employee was "using" the Anheuser Busch truck at the time of the accident in such a manner as to became an "insured" under Anheuser Busch's contract with Zurich. Thus Zurich contends the lower court was right for the wrong reason. For if this conclusion were true, then it irrefutably follows that Zurich became primarily liable for the injuries caused by the employee. However, the law of Ohio is clearly established that in determining coverage under similar "use" provisions, "a person is not an insured unless it is established that he is using the vehicle for purposes other than merely loading or unloading." (*Kurdziel* v. *Pittsburgh Tube Company* [6 C. A.], reported in 22 Ohio Misc. 262.)

The trial court apparently followed the test announced in *Bobier* v. *National Casualty Co.*[1] In this case, a company owned an insurance policy that protected against accidents arising out of the use of any automobile. Like the Zurich policy here, the insurance contract defined the "use" of an automobile as including the acts of "loading"

[1](1944) 143 Ohio St. 215. The court's findings of fact and conclusions of law are devoid of case authority, but in its memorandum opinion, filed with the clerk on May 28, 1971, the court relied heavily on *Bobier* and on syllabus No. 2 of *Travelers Ins. Co.* v. *Buckeye Union Casualty Co.* (1961), 172 Ohio St. 507, which approved and followed the *Bobier* standard for determining the metes and bounds of the term "loading."

and "unloading." Employees of the insured damaged a stove belonging to a third party, while they were carrying it from the third party's store to the insured's delivery truck, but before the actual lifting of the appliance onto the truck. The question before the court was whether the employees of the insured were "loading" [i. e. "using"] the truck at the time of the accident. The court held that "'loading begins' when the employees of the plaintiff [insured] connected with the truck receive the article and as part of a continuing operation place it upon the truck" (143 Ohio St. at 221), thus making the insurance company liable for the loss.

Under the *Bobier* test, it is undeniable that the Pure Milk employee was participating in an operation which the Zurich policy included as a "use" of the truck. And we can understand the seductive logic of the argument that one who loads a truck is "using" the truck and therefore is an "insured."[2] However, as evidenced by the subsequent case of *Travelers Insurance Company* v. *Buckeye Union Casualty Company*,[3] we do not think that the Supreme Court intended the *Bobier* test to be controlling in cases such as the instant one where the issue is whether the alleged tortfeasor's activities qualified him as an "insured."

In *Travelers,* the owner of a tank truck was insured against losses arising out of the use of his truck, including its loadings and unloadings. An employee of the truck owner drove the truck to a Gulf Refining Company bulk station to pick up a load of fuel. As the truck driver climbed onto the bed of the tank to remove the cover, a Gulf employee swung a loading pipe toward the truck. A quantity of fuel gushed out from the pipe and struck the truck driver, causing him to fall to the ground and sustain injury. The insurer of the tank truck denied that Gulf employee was "using" the truck, notwithstanding the fact that his work was in connection with loading the truck with fuel. The Supreme

---

[2]See Ex. 1, "Insuring Agreements, III. Definition of Insured (2)," which defines an insured in terms of who uses the named insured's automobile.

[3](1961) 172 Ohio St. 507.

Court sustained the insurer's position. It found that the facts did not satisfy the *Bobier* test, in that "there was no *movement* by *anyone* of anything, liquid or solid, which had any relationship to the purposeful presence of the truck."[4] However, the court was apparently troubled that the *Bobier* test for determining what constituted "loading," hence the "use" of a car or truck, might be inappropriately utilized as the sole standard for determining whether a tortfeasor had been "using" the vehicle, and was, hence, an "insured." Accordingly, the court went on to measure the facts in *Travelers* against a standard that would take into account the legal relationship of tortfeasor to the insured owner of the vehicle and the tortfeasor's overall activities in connection with the vehicle aside from those acts that might be characterized as loading and unloading. It concluded that the Gulf employee was not an "insured" under the policy held by the truck owner after observing that the tortfeasor was one who was "not connected with the truck," had "no legal relationship to the named insured," would not under normal circumstances be using the truck of the named insured, and was not exerting any control over the vehicle with expressed or implied permission of the named insured. In short, there was no evidence that the Gulf employee was engaged in the "actual use" of the truck, as the *Travelers* court held was required by the express terms of the contract. (See syllabus No. 3.)

We believe that under the tests of *Travelers* the Pure Milk employee by his actions did not become an "insured" under the Anheuser Busch insurance contract with Zurich. Whatever the legal relationship between Anheuser Busch and Pure Milk (lessee-lessor, according to Hartford), there was an absence here of the type of legal relationship between Anheuser Busch and the Pure Milk employee that would normally contemplate the delegation of authority to the latter to control and use the company's truck. Moreover, in light of *Buckeye Union Casualty Company* v. *Illinois National Insurance Company*,[5] it would now seem set-

---

[4]*Id.* at 512-513. (Emphasis added.)
[5](1965) 2 Ohio St. 2d 59.

tled that a nonemployee who assists in the loading of goods onto the truck of a named insured does not, by this act alone, make himself an additional "insured" under the truck owner's policy. In *Illinois National*, the wife of a car owner sustained injuries when a grocery clerk, after loading groceries into the trunk of her car, slammed the trunk lid on her head. In applying the *Travelers* standard, the Supreme Court held that while the operation of loading and unloading was covered under the car owner's insurance, a "loader or unloader is not 'an insured' unless otherwise made so."[9] The court thus concluded that grocery clerk was not an additional "insured" under the car owner's policy.

In summation, we hold that the trial court, although it reached the right result, erred in finding that the Pure Milk employee became an additional insured under the Zurich policy. Under the test of *Travelers*, as subsequently applied in *Illinois National*, the Pure Milk employee, despite his involvement in the loading of the Anheuser Busch truck was not an insured. Accordingly, no obligation on the part of Zurich ever arose to defend the Pure Milk employer or pay any damage claims for which it might become liable.

Based on this reasoning rather than the conclusions reached in the trial court, we affirm the judgment for the appellee.

*Judgment affirmed.*

DAY and CORRIGAN, JJ., concur.

---

[9]*Id.* at 63.