No. 1035. BERTMAN, DOING BUSINESS AS BERTMAN FOOD PRODUCTS, *v.* J. A. KIRSCH Co. C. A. 2d Cir. Certiorari denied. *Leonard Feldman* for petitioner. *Richard J. Burke* and *Myron L. Shapiro* for respondent.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE GOLDBERG join, dissenting from the denial of certiorari.

The United States contracted with Bertman, the petitioner here, for the delivery of imported tomato paste. Bertman in turn contracted with J. A. Kirsch Co. to supply the paste. After the United States had taken delivery, it claimed that the paste was spoiled, and it sued Bertman for breach of contract. In addition to defending against the Government's claims, Bertman brought Kirsch in as a defendant, claiming that if the paste was defective then the blame rested on Kirsch and that if the Government recovered against Bertman he in turn was entitled to recover against Kirsch. After a trial in the United States District Court, the jury found that the paste was not defective, and the court entered judgment holding Bertman not liable. Since Bertman owed the Government nothing, naturally Kirsch owed Bertman nothing, and judgment was entered holding that Bertman should recover nothing from Kirsch. Under 28 U. S. C. § 2107 and Fed. Rules Civ. Proc. 73, a party aggrieved by a judgment of this kind has sixty days in which to appeal. In this case the only party which stood to lose by the judgments when entered was the United States. At some time on the 60th day it filed a notice of appeal with the clerk of the court. At the moment this appeal was filed, Bertman once again was subject to the danger of liability which had originally caused him to bring Kirsch into the suit as a defendant. The natural defensive step for Bertman to take then was to file a notice of appeal against Kirsch, but notice of the Government's appeal was not served on Bertman until after the 60

days had passed—too late, both courts below held, for Bertman to take his appeal. Thus, even though Bertman's ability to protect himself against paying for another man's wrong depended on his having notice of the Government's appeal just as much as it depended on his having notice when he was sued in the first place, neither the statutes nor the rules required that he have notice in time to file his own appeal.

I am aware of the argument that an able, alert, ever-diligent lawyer could have, had he tried hard enough, discovered that the Government had appealed—even in the closing hours of the sixtieth day. I do not doubt that had Bertman's counsel been Superman, his X-ray eyes would have told him that a notice of appeal was being filed blocks away in the courthouse, or had he been a lawyer with no clients but Bertman he could have spent the sixtieth day hovering at the clerk's office to see whether the Government would file a notice of appeal. But Bertman's counsel (so far as the record shows) is not Superman, nor should the law expect him to be. The record is barren of any suggestion that he fell short of the standards generally expected of a capable lawyer. He relied, as lawyers in our system of jurisprudence are entitled to do, on the principle expressed by Daniel Webster when he said that due process means a law which "hears before it condemns." A chance to be heard, of course, requires notice. Bertman had no notice of the Government's appeal in time to file his own appeal. A system of appeals which fails to give this notice, whether by statute or rule, fails to provide the most elemental requirement of due process. The only construction of this rule consistent with due process and with the purpose of the Civil Rules to secure the "just . . . determination of every action"* would therefore be to hold that Bertman's filing within a reasonable time after notice was timely. Cf. *Fallen* v. *United States,* 378 U. S. 139.

*Fed. Rules Civ. Proc. 1.