Bruce H. GOULD, Plaintiff,

v.

GENERAL MILLS, INC., Defendant and
Third-Party Plaintiff,

v.

GREAT LAKES ASSOCIATES, INC.,
Third-Party Defendant.

No. Civ. 74–215.

United States District Court,
W. D. New York.

April 13, 1976.

Fenton Harrison, Harrison & Gruber, Buffalo, N. Y., for plaintiff.

Sheldon Hurwitz, Hurwitz, Siegel & Hurwitz, Buffalo, N. Y., for General Mills.

Herbert Lasky, New York City, for Great Lakes Associates, Inc.

Evan E. James, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is an action by plaintiff, Gould, a longshoreman, who was injured on June 18, 1973 while participating in unloading a cargo of wheat from a vessel with other fellow longshoremen, all employees of the stevedore, Great Lakes Associates, Inc. ("Great Lakes"), third-party defendant. The vessel was docked in the port of the City of Buffalo, N. Y., at the grain elevator owned by defendant and third-party plaintiff, General Mills, Inc. ("General Mills"), which owned and was the consignee of the cargo of wheat.

Gould sued General Mills, alleging that the latter had been negligent in furnishing to Great Lakes and its employees defective gear, machinery, equipment and appliances used by plaintiff and his fellow workers in the unloading process. More particularly, plaintiff charges that a certain bolt holding a chain clevis was defective and failed, thus permitting a shovel to fly about in uncontrolled fashion and to strike him, causing his injuries. Plaintiff further alleges that General Mills was guilty of a breach of its warranty of suitability for intended use of the gear and equipment, particularly of said bolt. General Mills denies all these allegations.

General Mills, in its third-party complaint, alleges that Great Lakes was negligent in failing to rig, inspect and install the equipment furnished by General Mills and failed to operate it properly, so that the bolt was broken, causing plaintiff's injuries. General Mills charges that Great Lakes warranted its competence and ability to perform the services of unloading the vessel in a safe and workmanlike manner, that all work connected with the unloading was under the sole direction and control of Great Lakes, that Great Lakes failed to furnish plaintiff with a safe place to work, and that all these faults, in addition to being acts of negligence, constituted a breach of Great Lakes's warranty of competence, ability and workmanlike service.

General Mills also contends that, while it denies its own complicity and fault in the injury to Gould, it may nevertheless be held liable to him by reason of "certain warranties, non-delegable duties and rules peculiar to Maritime Laws".

Finally, General Mills contends that, in any event, if plaintiff was not injured through his own negligence, he was injured through the active and primary negligence of Great Lakes. For all of the above reasons, claims General Mills, it is entitled to indemnification from Great Lakes as against all costs and expenses, judgment, damages, disbursements and attorneys' fees incurred or to be incurred.

Third-party defendant, Great Lakes, denies all these allegations and, furthermore, alleges that at the time of the accident it was fully insured for its liabilities to plaintiff under the Longshoremen's and Harbor Workers' Compensation Act ("the Act"), 33 U.S.C. §§ 901–950, that its insurance carrier has been paying to and will continue to pay to Gould all the benefits to which he is entitled under the Act, and that, by Section 905 of the Act, its liability for compensation payments under the Act is " * * * exclusive and in place of all other liability * * to the employee * * * and anyone otherwise entitled to recover damages from [it] at law or in admiralty on account of such injury * * *" 33 U.S.C. § 905(a).

Great Lakes moved for a summary judgment to dismiss the third-party action against it. The motion is based on the above-mentioned exclusivity provision of the Act. Great Lakes's sole contention is that section 905 of the Act "immunizes it from General Mills's suit for indemnity or

contribution and mandates dismissal" of the third-party complaint. Green affidavit (sworn to January 10, 1975). Such position is the essence of Great Lakes's "second, separate and complete affirmative defense" as set forth in its answer which is sworn to have been served December 6, 1974 and which was filed January 13, 1975. The answer and the affidavit state that movant was, at the time of the happening described in the complaint, insured under the Act for its liabilities to plaintiff. Although the affidavit is made by one of movant's attorneys and not by one who is able to speak of his own first-hand knowledge (Rule 56(e) of Fed.R.Civ.Pr.) and although the answer has not been signed by Great Lakes's attorney as is required by Rule 11 of the Federal Rules of Civil Procedure, it is assumed for purposes of the disposition of this motion that Great Lakes was so insured and was in compliance with section 904 of the Act. (Why this need to assume has not been obviated by the furnishing of a certificate of compliance [see § 937] is not shown.) That section says that "every employer" in maritime employment (§ 902(4)) shall secure the payment to his employees of the compensation payable for medical services and supplies (§ 907), disability (§ 908) and death (§ 909). An employer who fails to secure such is guilty of a misdemeanor (§ 938) and may be sued at law or in admiralty (§ 905(a)) and its president, secretary and treasurer may be liable for the unsecured benefits (§ 938).

It is noted particularly that there is not any allegation or assertion, nor any attempt to demonstrate, that there is "no genuine issue as to any material fact". Rule 56(c) of Fed.R.Civ.Pr. Great Lakes only claims that section 905 of the Act is its absolute and total shield.

The Act was originally enacted in 1927 and Section 905 was amended in 1972 by renumbering it as subsection 905(a) and without significant change. At the same time Congress added a new and supplementary subsection 905(b). Subsection 905(b) reads in pertinent part as follows:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. * * * The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." (Underscoring added.)

It is thus clear that subsection 905(b) is limited in its applicability to cases involving an action against a "vessel" for injury caused by the negligence of the "vessel".

The term "vessel" is defined as follows in subsection (21) of section 902 of the Act:

"The term 'vessel' means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter [sic] or bare boat charterer, master, officer, or crew member."

Plaintiff Gould has not sued either the vessel on which he was working at the time he sustained his injury or its owner or other person enumerated in the foregoing definition and none of the parties to the action or to the third-party action has suggested or submitted any facts from which it could be inferred that the only defendant, General

**1184**

Mills, comes within such definition of "vessel". It is clear that the provisions of subsection 905(b) are not at all applicable to the instant case. Nowhere within the bounds of the complaint, answer (by defendant), third-party complaint, amended third-party complaint and answer (by third-party defendant) is there the slightest intimation of any negligence on the part of or action against the vessel as so defined.

The question is, then, whether the third-party action is excluded by subsection 905(a) which, to the extent pertinent, reads as follows:

> "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death * *."

In short, the basic question is whether General Mills's third-party action for indemnity against Great Lakes is based solely *on account of the injury to Gould* and its allegations of negligent causation and attendant considerations of passive negligence vis-a-vis active negligence.

The answer is that it is not but is primarily founded on allegations that Great Lakes has breached its warranty to provide qualified personnel and its independently implied obligations arising from its legal relationship to perform the job in a good, safe and workmanlike manner.

These warranties and obligations and their legal interrelationship engender an implied agreement on the part of Great Lakes to indemnify General Mills, in the event of damages being foisted on General Mills via a judgment imposed for injuries to any third party—such as an employee of Great Lakes—incurred while participating in the unloading process through no fault on the part of General Mills but through the fault of Great Lakes in breaching its warranties and not fulfilling its obligations

arising from its legal relationship to General Mills. *Weyerhaeuser S. S. Co. v. Nacirema Co.* 355 U.S. 563, 568–9, 78 S.Ct. 438, 441, 2 L.Ed.2d 491, 494 (1958); *Ryan Co. v. Pan-Atlantic Corp.,* 350 U.S. 124, 132–5, 76 S.Ct. 232, 236, 100 L.Ed. 133, 141 (1956); *Hartnett v. Reiss Steamship Company,* 421 F.2d 1011, 1016–7 (2nd Cir., 1970); *Booth Steamship Co. v. Meier & Oelhaf Co.,* 262 F.2d 310 (2nd Cir., 1958); *Rich v. United States,* 177 F.2d 688 (2nd Cir., 1949). The subject as to when indemnity will be permitted is summed up by Prosser in his *Law of Torts* 4th Ed., sect. 51, pages 310–313, and is exhaustively analyzed and discussed in Larson's *Workmen's Compensation Law,* 1972 Edition, Vol. 2, sects. 76.30–76.43(b), pages 250.10–250.57.

Defendant and third-party plaintiff's claim over against third-party defendant is not barred as a matter of law and, inasmuch as there is not any contention that there is not any genuine issue of material fact, third-party defendant's motion for summary judgment must be and the same hereby is denied. It is so ordered.