**Celia ZAPICO, Individually, as the wife of Joseph Zapico, Deceased, and on behalf of Angel Zapico, Victor Zapico, Hortensia Zapico, Celia Zapico and Joseph Zapico, children of Joseph Zapico, Deceased, and Adolfo Millan, Plaintiffs,**

v.

**BUCYRUS–ERIE CO., Defendant and Third-Party Plaintiff,**

v.

**ATLANTIC CONTAINER LINE, LTD., and Antonio Fuet, Third-Party Defendants.**

**No. 74 Civ. 2189.**

United States District Court, S. D. New York.

July 18, 1977.

**2.** Goldstein, "The Competitive Mandate: From Sears to Lear," 59 Calif.L.Rev. 873 (1971).

DiCostanzo, Klonsky & Cutrona, P.C. by Robert Klonsky, Brooklyn, N. Y., for plaintiffs.

Conway, Reiseman, Michals & Wahl by Neil Reiseman, Newark, N. J., for defendant.

Alexander, Ash, Schwartz & Cohen by Joseph Arthur Cohen, New York City, for third party defendants.

OWEN, District Judge.

The major question presented by the various post-trial motions[1] is whether third-party defendant Atlantic Container Lines (ACL), a stevedore, enjoys immunity from liability to a truck-crane manufacturer, Bucyrus-Erie Co., the defendant, third-party plaintiff, under 33 U.S.C. § 905 for its proportion of fault, as found by the jury, for the injury to its [ACL's] employee Adolfo Millan and death of its employee Joseph Zapico, caused by the Bucyrus-Erie truck-crane that went out of control while being driven by ACL's employee, third-party de-

---

1. Defendant, third-party plaintiff Bucyrus-Erie Co.'s motion to amend its pleadings insofar as necessary to "conform [them] to the evidence" adduced at trial is granted. Fed.R.Civ.P. 15(b).

Plaintiff Celia Zapico's motion to strike the jury's finding of 25% contributory negligence on the part of Joseph Zapico, which operates to reduce the award accordingly, is again denied.

fendant Antonio Fuet,[2] down an interior ramp of a vessel for shipment to Europe. The jury found under the Court's charge that defendant Bucyrus-Erie negligently manufactured the truck-crane in question, and also that ACL furnished an incompetent employee to drive the unwieldy crane aboard and down a ramp into the hold of the vessel. The jury found that both these factors contributed equally to the death and injuries in question. The record supports this conclusion in that while brake failure could have set the tragedy in motion, a competent driver could have taken reasonable steps to avoid it.

ACL's essential position is that it is not subject to contribution for its share of culpability since it is a compensation-paying stevedore, *see, e. g., Cooper Stevedoring Co., Inc. v. Kopke, Inc.,* 417 U.S. 106, 114–15, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), *discussing Atlantic Coast Line R. Co. v. Erie Lackawanna R. Co.,* 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972) (per curiam); *Galimi v. Jetco, Inc.,* 514 F.2d 949 (2d Cir. 1975),[3] nor is it required to indemnify Bucyrus-Erie, the primary defendant, since there was no agreement to do so, either explicit or implied, as there was in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).[4]

The extent, if any, of ACL's statutory immunity from liability in Bucyrus-Erie's third party action against it must be found in 33 U.S.C. § 905(a), since Bucyrus-Erie is not a "vessel" within the meaning of the Longshoremen's and Harbor Workers' Compensation Act, as amended (the Act), 33 U.S.C. §§ 901 et seq., and therefore does not benefit from the immunity provided for under § 905(b).[5]

§ 905(a) merely restates the law as it was prior to the 1972 amendments to the Act.[6] That subsection bars recovery from an employer by the injured employee or the legal representative of a deceased employee and anyone else "entitled to recover damages from such employer . . . *on account of* such injury or death" of the employee. *Id.* (emphasis supplied).

Here, Bucyrus-Erie did not seek damages from ACL "on account of" Zapico's death and Millan's injury.[7] Rather, it sought partial indemnification either as a third-party beneficiary of the stevedoring contract between ACL and the vessel or on a quasi-contractual theory, based on an alleged breach of an independent duty owed to it by ACL. Both theories essentially rely on the stevedore's implied warranty of workmanlike performance, given by the stevedore to the vessel, which was charac-

---

**2.** The jury found Fuet not negligent in his driving of the truck-crane, although it found him incompetent to do so.

**3.** In *Myers v. J. A. McCarthy, Inc.,* 428 F.Supp. 656 (E.D.Pa.1977), the court adopted the following syllogism: only joint tortfeasors are subject to contribution; a compensation-paying employer cannot be a tortfeasor with respect to its injured employees because it enjoys statutory immunity from suit; therefore, a compensation-paying employer cannot be subject to contribution. The validity of the proposition that there must first be underlying tort liability by the employer to the employee before contribution or indemnity in tort may be required of the employer in favor of a third party has been doubted. *See Brkaric v. Star Iron & Steel Co.,* 409 F.Supp. 516, 522 (E.D.N.Y.1976).

**4.** The 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act overruled the *Ryan* case, by nullifying any agreements or warranties between an employer and a vessel that would have required such indem-

nification. 33 U.S.C. § 905(b). The *quid pro quo* received in return by the vessel was the extinguishment of the unseaworthiness doctrine. Id. § 905, by its terms, applies only to vessels and is not available as a defense to ACL against Bucyrus-Erie.

**5.** *See* note 3, *supra.*

**6.** There are only minor syntactic changes not here relevant.

**7.** While obviously there would be no action here if Zapico had not been killed and Millan injured, § 905(a) protects employers only from claims of persons "claiming *under* or *through*" employees covered by the Act. *Ryan, supra,* 350 U.S. at 129, 76 S.Ct. at 232 (emphasis supplied). *See generally, Galimi v. Jetco, Inc., supra,* 514 F.2d at 953–55 (discussion of similar exclusive remedy provision of the Federal Employees Compensation Act).

terized by the *Ryan* Court as "comparable to a manufacturer's warranty of the soundness of its manufactured product," 350 U.S. at 133–34, 76 S.Ct. at 237, and which in this case was found by the jury to have been breached when ACL wrongfully supplied unqualified personnel, including Antonio Fuet, the driver of the truck-crane. Just as the manufacturer's implied warranty has been extended in numerous jurisdictions to all foreseeable users of the manufacturer's product, so has the strict privity of contract requirement to benefit from the stevedore's implied warranty of workmanlike performance been abrogated. *E. g., Waterman Co. v. Dugan & McNamara*, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); *Crumady v. The J. H. Fisser*, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). And, indemnification based on a quasi-contractual theory has been recognized, in a statutory framework on which the Longshoremen's and Harbor Workers' Compensation Act was based. *See Westchester Lighting Co. v. Westchester County*, 278 N.Y. 175, 15 N.E.2d 567 (1938); *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972).

■ Extending third-party benefits of the stevedoring contract to the consignor of goods when the consignor is a manufacturer, or providing apportionment of damages

based on proportion of fault when it is the stevedore's negligence that brought the manufacturer's negligence or breach of implied warranty into play, would violate no statutory or judicially recognized immunity or principle, and would only be equitable in the traditions of the maritime law.[8] This is particularly so since such manufacturers have no control over who performs later stevedoring functions and are increasingly being subjected to strict liability in tort.[9]

Accordingly, ACL's motion for entry of judgment in its favor, on the ground that it furnished its employees with the benefits required by the Act and is therefore not subject to contribution or indemnity, is denied.[10]

A judgment shall therefore be submitted in conformity with the jury's verdict on reasonable notice.

So Ordered.

---

**8.** *See generally United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *Cooper Stevedoring Co. v. Kopke, Inc.*, 417 U.S. 106, 110–11, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); *Brkaric v. Star Iron & Steel Co.*, 409 F.Supp. 516 (E.D.N.Y. 1976).

**9.** The conclusion that Bucyrus-Erie breached its implied warranty that its product was fit for its ordinary purpose and use and should be held strictly liable in tort is implicit in the jury's finding that Bucyrus-Erie negligently manufactured the truck-crane, although quixotically the jury exonerated Bucyrus-Erie on these theories of liability.

**10.** *Edmonds v. Compagnie Generale Transatlantique*, 558 F.2d 186 (4th Cir. 1977), which recognized an equitable credit doctrine, is urged upon me by both Bucyrus-Erie and ACL. *Edmonds* was a case in which a longshoreman, who received $20,000 in compensation benefits from his stevedore employer, sued the vessel for its negligence. The jury found damages of

$100,000, found Edmunds 10% contributorily negligent and the stevedore 70% contributorily negligent. The district court reduced Edmund's award by only $10,000, which represented the extent of his comparative negligence. The Fourth Circuit reversed, and held "that a more equitable distribution of liability, and one more consistent with the amended [A]ct, is achieved by limiting the vessel owner's liability to the extent of its fault, in this case $20,000, plus the amount of the stevedore's lien as set forth below." *Id.* at 189. I decline to follow *Edmunds* in any fashion. First, *Edmunds* is a § 905(b) case involving a "vessel" and second, the indications are that the Second Circuit "will not follow an 'equitable credit' doctrine or any similar apportionment of liability in § 905(b) cases under the 1972 Amendments [to the Act]." *Marant v. Farrell Lines, Inc.*, 550 F.2d 142, 150 (3d Cir. 1977), *discussing Landon v. Lief Hoegh*, 521 F.2d 756, 760, 763 (2d Cir. 1975).